IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE BABA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL O. LEAVITT, Secretary of the Department of Health and Human Services,<br><br>　　　　Defendants.<br>_____/ | No. C-04-3665 MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket Nos. 22, 25) |

　　　Plaintiff Stephanie Baba, O.D. ("Dr. Baba") brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Secretary of the Department of Health and Human Services ("Secretary") that Dr. Baba is liable for $47,377.08 in overpaid Medicare benefits. Before the Court are Dr. Baba's motion for summary judgment or, in the alternative, remand, filed December 16, 2005, and the Secretary's cross-motion for summary judgment, filed February 3, 2006. Dr. Baba has filed opposition to the Secretary's motion, to which the Secretary has replied. With the Court's permission, Dr. Baba has filed a surreply. The Court, having considered the papers filed in support of and in opposition to the motions, rules as follows.

**BACKGROUND**

　　　The instant action arises from a final decision of the Secretary, dated March 18, 2002, that Dr. Baba was overpaid Medicare benefits in the amount of $47,377.08 for optometric examinations she performed during the period January 15, 1997 to December

18, 1997, and that she was at fault for the overpayment. (See Transcript of Administrative Record ("Tr.") at 6-19.)

### A. NHIC Audit of 1997 Medicare Claims

Dr. Baba is a licensed optometrist. (See Tr. at 509.) In 1997, Dr. Baba rendered optometric services in skilled nursing facilities to Medicare beneficiaries, and billed Medicare for reimbursement through her insurance carrier, National Heritage Insurance Company ("NHIC"). (See Tr. at 481-82, 663-64.) After paying the claims, NHIC conducted an audit of Medicare reimbursement claims paid to Dr. Baba from January 1, 1997 through December 18, 1997, based on a random sampling of 30 patients from the universe of 532 patients to whom Dr. Baba had provided such services. (See Tr. at 481.)

As part of the NHIC audit, John G. Rosten, O.D. ("Dr. Rosten"), acting as a medical advisor, reviewed the records of the thirty patients to determine whether Dr. Baba appropriately billed Medicare for services she provided to those patients. (See Tr. at 481, 492-508.) Dr. Rosten concluded that Dr. Baba improperly billed Medicare for her services under the American Medical Association's Current Procedural Terminology ("CPT") billing code 99303 in 28 of the 30 cases, and also engaged in other billing improprieties.[1] (See Tr. at 508.) Dr. Rosten opined that "[p]rocedure code 99303 is intended to be utilized for a full assessment of a nursing facility resident, rather than for a vision or eye health assessment" and that "[t]he scope of practice required to utilize this procedure is well beyond the legal scope of Dr. Baba as a licensed optometrist." (See Tr. at 492-493.) Dr. Rosten additionally observed that "the patient record showed no authorization for optometric services by the attending physicians," and concluded "[t]his constitutes unprofessional conduct." (See Tr. at 493.)

---

[1] CPT Code 99303 is the billing code used for "[e]valuation and management of a new or established patient involving a nursing facility assessment at the time of initial admission or readmission to the facility." (See Tr. at 14-15, 82.) Billing is appropriate under Code 99303 where "three key components" are present: (1) "a comprehensive history"; (2) "a comprehensive examination"; and (3) "medical decision making of moderate to high complexity." (See id. at 14-15, 82) In addition, "[t]he creation of a medical plan of care is required." (See id. at 14-15, 82.)

2

In the NHIC's "Final Notice of Audit Results," dated November 30, 2000, it concluded that the services Dr. Baba claimed to have been performed were beyond the scope of her optometry license and were not medically necessary, and that Dr. Baba was in violation of numerous sections of the California Business and Professions code relating to the practice of optometry. (See Tr. at 663-76.) Accordingly, the NHIC concluded, Dr. Baba was overpaid for claimed Medicare services in the amount of $47,377.08. (See Tr. at 663, 676.)

### B.   California Board of Optometry Investigation

Concurrently with the NHIC audit, the California Board of Optometry ("Board") began its own investigation into Dr. Baba's 1997 Medicare claims and drafted a report ("investigation report"), dated March 16, 2000. (See Tr. at 509.) Thereafter, on June 22, 2000, the Board filed a formal accusation against Dr. Baba with the Board's Department of Consumer Affairs ("Accusation"), seeking to revoke or suspend her license because of unprofessional conduct. (See Tr. at 537.) The Accusation alleged that Dr. Baba violated § 3100 of the California Business and Professions Code by using "cappers" and "steerers" to obtain business, (see Tr. at 538-39), and that she violated §§ 3090 and 3101 of the California Business and Professions Code by fraudulently obtaining fees from Medicare for services she purportedly rendered to nursing home patients between January 1997 and December 1999, by inappropriately billing for such services under Code 99303, (see Tr. at 539-541).

According to Dr. Baba, the Board's investigation was settled in October 2000, without an admission of wrongdoing. (See Tr. at 759.)

### C.   Further Review of 1997 Medicare Claims

#### 1.   Medicare Hearing Officer's Decision

On January 5, 2001, a Medicare Hearing Officer held a telephonic hearing with respect to Dr. Baba's 1997 Medicare claims. (See Tr. at 482.) In a decision dated April 11, 2001, the Hearing Officer determined that NHIC "correctly assessed an overpayment" in the amount of $47,377.08. (See Tr. at 483, 486.) According to the Hearing Officer, the evidence "clearly establishe[d] that the evaluation and management services were not

3

1  medically necessary and reasonable, and were rendered by Dr. Baba out of the scope of
2  her licensure." (See id. at 483.)  The Hearing Officer concluded: "Because procedure code
3  99303 represents **comprehensive nursing facility assessment** usually performed by an
4  attending physician requiring at least a detailed history, a **comprehensive physical**
5  **examination** and medical decision making of high complexity, I concur with the Carrier and
6  Medical Advisor that this code is not within the scope of practice of an optometrist to
7  perform, and therefore, not payable by Medicare." (See id. (emphases in original).)

### 2. ALJ's Decision

Dr. Baba thereafter requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 21, 2002. (See Tr. at 747.)  Dr. Baba appeared at the hearing without counsel, testified that she was aware of her right to appear with counsel, and further testified she was willing to proceed without counsel; the ALJ found Dr. Baba knowingly waived her right to counsel. (See Tr. at 749-50.)  Dr. Baba further testified she had no objection to the admission of exhibits from her file. (See Tr. at 751.)  Dr. Baba was the only witness to testify at the hearing. (See id. at 748-819.)

On March 18, 2002, the ALJ issued a written decision. (See Tr. at 6-18.)  The ALJ identified the issue before her as whether Dr. Baba had been overpaid Medicare benefits under the Medicare Part B supplementary medical insurance program, for optometric services she provided to nursing home residents during the period of January 15, 1997 through December 18, 1997 and, specifically, whether she "received incorrect Medicare reimbursement for noncovered services provided during the period in question." (See id. at 9-10.)  The ALJ noted Dr. Baba had billed for such services under CPT Code 99303, (see id. at 14), and found Dr. Rosten's opinion, specifically, that Code 99303 was only intended to be utilized for a full assessment of a nursing facility resident by an attending physician, was "credible and fully supported by a plain reading" of the code. (See id.)  The ALJ further concluded that Dr. Baba had performed routine optometric examinations. (See id. at 15.)  The ALJ thus determined Dr. Baba's "use of CPT Code 99303 in billing for and receiving payment for these services was clearly incorrect," and that Dr. Baba had "billed for and

received payment for services which she did not perform and was not licensed or medically qualified to perform as an optometrist under California law." (See id. at 15.)

The ALJ rejected Dr. Baba's testimony that she had performed comprehensive eye examinations for the treatment or diagnosis of an illness, symptom, complaint, or injury, and found instead that Dr. Baba's treatment notes demonstrated she had performed "general eye examinations in which the individual's refractive state is being determined for the purpose of prescribing, fitting, or changing eyewear." (See id. at 16.) Such routine eye examinations, the ALJ noted, are excluded from coverage pursuant to § 1862(a)(7) of the Social Security Act (42 U.S.C. § 1395y(a)(7)). (See id. at 17.)

As determined by the ALJ, because "a plain reading of the criteria in CPT Code 99303 clearly indicates this code is to be used only for a full assessment of a nursing facility resident, and not for a vision or eye health assessment," Dr. Baba "could not credibly believe that it was appropriate to use CPT Code 99303 when billing for these services[.]" (See at 15-16.) Accordingly, the ALJ concluded, Dr. Baba was at fault for the overpayment and, consequently, was solely liable for the overpayment, in the amount of $47,377.08. (See id. at 17.)

In addition, the ALJ noted, the Board's investigation of Dr. Baba established that she had violated California law by accepting nursing home patient referrals from Mariana Love ("Love"), doing business as In Home Vision Services, in exchange for splitting her fee on a 50% basis with Love. (See id. at 15.) The ALJ further concluded that "because the services in question were performed by [Dr. Baba] in violation of California law, they are excluded from Medicare coverage under section 1861(r)(4) of the [Social Security] Act and HCFA Regulation 42 CFR 410.23."[2]  (See id.)

### 3. Medicare Appeals Council's Decision

On June 24, 2004, the Departmental Appeals Board Medicare Appeals Council

---

[2] Section 1861(r)(4) is codified at 42 U.S.C. § 1395x(r)(4).

5

denied Dr. Baba's request for review of the ALJ's decision. (See Tr. at 1.) As a result of that denial, "[t]he ALJ's decision stands as the final decision of the Secretary." (See id.)

## LEGAL STANDARD

The instant action arises under Medicare Part B, which "is a federally subsidized, voluntary health insurance system for persons who are 65 or older or who are disabled." See United States v. Erika, Inc., 456 U.S. 201, 202 (1982); see also 42 U.S.C. §§ 1395j-1395w-4. "The companion Part A Medicare program covers institutional health costs such as hospital expenses." United States v. Erika, Inc., 456 U.S. at 202. "Part B supplements Part A's coverage by insuring against a portion of some medical expenses, such as certain physician services and X-rays, that are excluded from the Part A program." Id. Part B is financed by a combination of monthly premiums paid by the individuals who have enrolled in Part B, and contributions from the federal government, which are deposited in the Federal Supplementary Medical Insurance Trust Fund. See id.

Claims for payment under Part B are made through private insurance carriers under contract with the Secretary. See id.; see also 42 U.S.C. § 1395u(a). Carriers are prohibited from, inter alia, paying claims that "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." See 42 U.S.C. § 1395y(a)(1)(A). "If the carrier determines that a claim meets all Part B coverage criteria such as medical necessity and reasonable cost, the carrier pays the claim out of the federal funds." See United States v. Erika, Inc., 456 U.S. at 202.

If a carrier determines that an overpayment has been made to a claimant, the carrier may seek recoupment of any such overpayment. See 42 C.F.R. 405.371(a)(2). The Secretary may waive recovery of an overpayment if he determines the claimant "was without fault" and recovery would be "against equity and good conscience." See 42 U.S.C. § 1395gg(b)(1)(B) and (c); 42 C.F.R. § 405.358.

If a claimant is dissatisfied with the initial determination of the carrier, he/she may request a hearing before the carrier if the amount in controversy is at least $100. See 42 C.F.R. § 405.801(a). Thereafter, if the amount remaining in controversy is at least $500,

the claimant may obtain review by an ALJ, and request review of the ALJ's decision by the Departmental Appeals Board ("DAB"). See id. Following the action of the DAB, if the amount remaining in controversy is at least $1000, the claimant may seek review in federal court. See 42 U.S.C. § 1395ff(b)(1)(A); see also 42 C.F.R. §§ 405.801(a), 405.857(a).

On review, the Secretary's findings "as to any fact, if supported by substantial evidence, shall be conclusive . . . ." See 42 U.S.C. § 405(g); see also 42 U.S.C. § 1395ff(b)(1)(A) (providing § 405(g) sets forth applicable standard for appeals under Medicare Part B). The Court must affirm the findings of the Secretary "if they are supported by 'substantial evidence' and if the proper legal standard was applied." See Mayes v. Masanari, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id at 459 (internal quotation and citation omitted). "Whether substantial evidence supports a finding is determined from the record as a whole, with the court weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." Id. "When the evidence rationally can be interpreted in more than one way, the court must uphold the [Secretary's] decision." Id.; see also Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) ( "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

**DISCUSSION**

Dr. Baba contends that the ALJ erred by: (1) admitting into evidence Dr. Rosten's report and the Board's investigation report; and (2) denying Dr. Baba's right to confront adverse witnesses by not making Dr. Rosten available for cross-examination. Dr. Baba further argues that CPT Code 99303 was the proper billing code for the services she provided, or, in the alternative, that she was not made aware that CPT Code 99303 was an improper billing code for optometric services. Finally, Dr. Baba argues that even if CPT Code 99303 was not the proper billing code, she should be reimbursed for her services under a different billing code.

### A.  Admission of Dr. Rosten's Report and Board's Investigation Report

Dr. Baba argues the ALJ improperly admitted into evidence Dr. Rosten's report and the Board's investigation report because (1) said reports are inadmissible hearsay and not prepared under oath, (2) Dr. Baba was not provided the opportunity to cross-examine the drafters of the reports, and, (3) as to Dr. Rosten's report only, Dr. Rosten's conclusions with respect to the interpretation of Code 99303 were not a proper subject for expert opinion.

#### 1.  Admission of Unsworn Hearsay Evidence

Dr. Baba asserts Dr. Rosten's report and the investigation report were unsworn hearsay and, as such, inadmissible.

The administrative review procedures set forth in Subpart J of 20 C.F.R. Part 404 are applicable to Medicare Part B appeals. See 42 C.F.R. § 405.801(c). Pursuant to Subpart J, the administrative review process is conducted in "an informal, nonadversary manner," and the ALJ will consider any information presented by the claimant as well as all information in the Secretary's records. See 20 C.F.R. § 404.900(b). The applicable regulations expressly provide that the ALJ "may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court." See 20 C.F.R. § 404.950(c).

As the Ninth Circuit has observed:

> Perhaps the classic exception to the strict rules of evidence in the administrative context concerns hearsay evidence. Not only is there no administrative rule of automatic exclusion for hearsay evidence, but the only limit to the admissibility of hearsay evidence is that it bear satisfactory indicia of reliability. We have stated the test of admissibility as requiring that the hearsay be probative and its use fundamentally fair.

See Calhoun v. Bailar, 626 F.2d 145, 148 (9th Cir. 1980). Consequently, hearsay statements are admissible in administrative hearings if they "have probative value and bear indicia of reliability." See id. at 149; see also Richardson v. Perales, 402 U.S. 389, 402 (1971) (holding physician's written report can constitute substantial evidence in support of denial of claim for Social Security disability benefits, despite claimant's objection to its admissibility and medical testimony to the contrary).

Moreover, as a general rule, "hearsay evidence admitted without objection or later motion to strike may constitute substantial evidence in like manner as any other evidence." See Calhoun, 626 F.2d at 150. In the instant action, the ALJ asked Dr. Baba whether she had any objections to the evidence in the administrative record, and Dr. Baba stated she had no objections. (See Tr. at 750:23-751:8.) Indeed, to date, Dr. Baba has pointed to no errors of fact in Dr. Rosten's report or in the Board's investigative report and, consequently, fails to demonstrate that the reports lack probative value and indicia of reliability.

Accordingly, the ALJ did not err by admitting the reports into evidence.[3]

### 2. Right to Cross-Examine Adverse Witnesses

Dr. Baba asserts she was denied due process, specifically, the right to confront adverse witnesses, because Dr. Rosten was not made available for cross-examination. Dr. Baba relies on Goldberg v. Kelly, 397 U.S. 254, 267-68 (1970), in which the Supreme Court held due process, in the context of an administrative decision to terminate welfare benefits, requires that a claimant be given "an effective opportunity to defend by confronting any adverse witnesses . . . ." See id. at 267-68.

Where a claimant has the opportunity to subpoena witnesses and fails to do so, however, "the claimant as a consequence is to be precluded from [later] complaining that he was denied the rights of confrontation and cross-examination." See Richardson, 402 U.S. at 404-05. The regulations applicable to Medicare Part B appeals expressly provide that parties may subpoena witnesses to appear before the ALJ. See 20 C.F.R. § 404.950(d)(2). Dr. Baba was on notice as to the existence and unfavorable nature of Dr. Rosten's report because it was cited in the decision of the Medicare hearing officer. (See Tr. at 481.) Because Dr. Baba could have called Dr. Rosten as a witness at the hearing before the ALJ, but failed to do so, she is precluded from arguing she was denied

---

[3] Moreover, the ALJ did not simply adopt the conclusions of the Board's investigative report or of Dr. Rosten's report, but, rather, "carefully considered all the documents identified in the record . . . , the testimony at the hearing, and the arguments presented," and, in particular, conducted a "thoroug[h] review" of Dr. Baba's "consultation notes . . . pertaining to each beneficiary." (See Tr. at 9, 15.)

her rights of confrontation and cross-examination.  See Richardson, 402 U.S. at 404-05.

### 3. Reliance on Dr. Rosten's Interpretation of Code 99303

Dr. Baba argues the ALJ improperly relied on Dr. Rosten's interpretation of CPT Code 99303.  Dr. Baba contends the interpretation of Code 99303 is a matter of legal interpretation, rather than a matter for expert testimony and, consequently, that the ALJ erred by accepting Dr. Rosten's opinion on the issue.

The ALJ did not accept Dr. Rosten's opinion as to the interpretation of Code 99303 as a matter of expert testimony, however.  Rather, the ALJ noted Dr. Rosten's conclusion that Code 99303 was intended to be utilized for a full assessment of a nursing facility resident, and not for a vision or eye health assessment, and found Dr. Rosten's interpretation was "credible and fully supported by a plain reading of CPT Code 99303 itself." (See Tr. at 14.)  The ALJ thus independently interpreted Code 99303.  Under such circumstances, the ALJ did not rely improperly on Dr. Rosten's interpretation of Code 99303.

### B. Conclusion as to Improper Use of Billing Code

Dr. Baba argues that she properly billed her services under CPT Code 99303 because (1) she is an optometrist; (2) the Medicare Carriers' Manual provides that Medicare pays for "the services of an optometrist, acting within the scope of his or her license, if he or she furnishes services that would be covered as physicians' services when performed by a doctor of medicine or osteopathy"; and (3) the Social Security Act defines "physician" to include optometrists for certain purposes. (See Motion at 7 (citing Medicare Carriers' Manual § 15039 and 42 U.S.C. § 1395x(r).)

Dr. Baba's argument fails to address the ALJ's interpretation of Code 99303 as requiring "a full assessment of a nursing facility resident (presumably by an attending physician), and not . . . a vision or eye health assessment." (See Tr. at 14.)  The ALJ's interpretation of Code 99303 is not only supported by the plain language of the code, but also by its location in the CPT manual.  Code 99303 appears in a section of the CPT manual titled "Comprehensive Nursing Facility Assessments." (See Tr. at 81-82.)

Additionally, as set forth in the ALJ's decision, Code 99303 expressly applies only to a "comprehensive examination" of a patient "at the time of initial admission." (See Tr. at 14, 82.) Nothing in the CPT manual suggests that Code 99303 applies to vision care examinations by optometrists. Dr. Baba submitted no evidence that she performed comprehensive medical examinations or that she is qualified to do so. Although Dr. Baba is correct that the Social Security Act defines "physician" to include optometrists, an optometrist is considered to be a physician only "with respect to the provision of . . . services . . . which he is legally authorized to perform as a doctor of optometry." See 42 U.S.C. § 1395x(r)(4).

Accordingly, the ALJ did not err in concluding that Dr. Baba could not bill for her services under Code 99303; as an optometrist, she was not qualified to perform comprehensive medical examinations and she performed only "routine optometric examinations."[4] (See Tr. at 15.)

### C. Application of Code 99303

Dr. Baba argues that "[g]iven the lack of clear, unequivocal statement that billing under [Code] 99303 was improper, it is a violation of due process to deny plaintiff's claims based on an ex post facto interpretation of the rules and procedures." (See Motion at 8.) Dr. Baba argued before the ALJ that Love was told by the NHIC to use Code 99303 in billing for Dr. Baba's services, and that until the NHIC issued its March 2000 Medicare Bulletin stating that optometrists may not bill under Code 99303, Dr. Baba had no way of knowing that use of Code 99303 to bill for such services was inappropriate.

The ALJ rejected Dr. Baba's reliance on the proffered transcript of a recorded telephone conversation between Love and the carrier, finding the document not "even remotely convincing," because "[n]owhere in the transcript of this alleged conversation does

---

[4] Dr. Baba's reliance on another ALJ's decision that certain optometric services performed by Matthew D. Houser, O.D., were reimbursable under Medicare, (see Tr. at 157-195), is unavailing, as that decision did not address the propriety of billing under Code 99303, and because Dr. Baba has not demonstrated that she performed services equivalent to those performed by Dr. Houser.

11

the individual speaking to the carrier identify the services to be billed as those of an optometrist." (See Tr. at 15.)[5] Having reviewed the transcript in question, (see Tr. at 246-47), the Court agrees with the ALJ that nothing in the transcript indicates that the carrier told Love to use Code 99303 for the billing of Dr. Baba's optometric services.

Moreover, as discussed, the Court agrees with the ALJ that the plain meaning of Code 99303 is that it applies only to comprehensive medical examinations, not to optometric examinations. Although Dr. Baba correctly notes that the NHIC's March 2000 Medicare Part B Bulletin states that Code 99303 requires "comprehensive nursing facility assessments, usually performed by an attending physician," and that "[i]t is not within the scope of practice for an optometrist to perform these services," (see Tr. at 244), nothing in that bulletin states or even suggests that such interpretation constituted a new policy.

Accordingly, the ALJ did not deny Dr. Baba due process by applying the plain meaning of Code 99303, or by finding such meaning should have been clear to Dr. Baba at the time she billed for the services in question.

**D. Reimbursement Under Another Billing Code**

Dr. Baba argues that even if CPT Code 99303 was not the proper billing code, she should be reimbursed for her services under a different billing code, and that the Court should remand the case for a determination of the proper level of reimbursement.

The ALJ found, however, that "the services in question do not satisfy the criteria for Medicare coverage." (See Tr. at 17.) As the ALJ noted, Medicare Part B bars payment for "eye examinations for the purpose of prescribing, fitting, or changing eyeglasses, [and] procedures performed (during the course of any eye examination) to determine the refractive state of the eyes." See 42 U.S.C. § 1395y(a)(7); 42 C.F.R § 411.15(c). The ALJ found Dr. Baba's consultation notes "clearly describe general eye examinations in which the individual's refractive state is being determined for the purpose of prescribing, fitting, or

[5] Further, nothing in the transcript suggests the conversation concerned the particular services performed by Dr. Baba. Indeed, in the transcript, Love refers to the medical professional in question as "he." (See id. at 247.)

changing eyewear." (See Tr. at 16, 275-436.)  Dr. Baba presents no argument that the ALJ's conclusions are not supported by substantial evidence.

Consequently, Dr. Baba has not demonstrated she is entitled to reimbursement for her optometric services under another billing code.

## CONCLUSION

For the reasons set forth above, Dr. Baba's motion for summary judgment, or, in the alternative, remand, is hereby DENIED, and the Secretary's cross-motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: August 8, 2006

MAXINE M. CHESNEY
United States District Judge